UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
|               Plaintiff,        ) | Civ. No. 07-00580 (EGS) |
|               v.        ) | |
| $21,600 IN UNITED STATES CURRENCY        )<br>RECOVERED FROM A SHOE BOX        )<br>FOUND IN A CAR,        ) | |
|               Defendant.        ) | |

## STATUS REPORT

*COMES NOW*, plaintiff, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully to respond to this Court's order of August 10, 2007. In summary, in March and May 2007, plaintiff sent notice to the only person who filed a claim for the defendant funds during the earlier administrative forfeiture process, and she has not filed a claim in this judicial forfeiture action. The time for her to do so has run. The government also has provided notice by publication for the public, and by certified mail, regular mail, or hand-delivery to the addresses of the specific persons who conceivably might be able to file a claim. If no person files a claim within 35 days of this report, plaintiff expects to move for judgment by default. In support whereof, plaintiff submits as follows:

    1.    This is a civil forfeiture action brought *in rem* on March 26, 2007, against $21,600 in cash, alleging that the currency either is the proceeds of illegal drug-trafficking crimes, or was to be used to buy illicit narcotics. As such, the currency is forfeitable under 21 U.S.C. § 881(a)(6). Officers of the Metropolitan Police Department (MPD) had seized the money from a shoe box inside a car being driven by Mr. Michael Perry during a traffic stop in Washington, D.C., on June 20, 2006.

2. Following the seizure, MPD transferred the cash to the federal Drug Enforcement Administration (DEA) to begin procedures for the currency's forfeiture by an administrative, non-judicial process. On December 28, 2006, Ms. Renee Jones Perry filed with the DEA a claim to the cash. She is Mr. Perry's mother. Certifying "under penalty of perjury" that it was true, Renee Jones Perry stated that she had provided the $21,600 to her son "as a gift towards the purchase of a home." After receiving this claim, the DEA halted the administrative forfeiture process, and the government brought this action on March 26, 2007, to forfeit the currency by the judicial process instead.

3. About 135 days later, on August 10, 2007, this Court directed the government "to file a status report and recommendation for further proceedings in this case by no later than September 7, 2007. In its status report, the Government shall address whether or not it has complied with the notice requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions."

4. When plaintiff filed this forfeiture action *in rem* on March 26, 2007, it served the Complaint and Warrant of Arrest *in rem* on the defendant currency on March 26, 2007. Thereafter, the government also took a number of steps to comply with Rule G's notice requirements. Perhaps most important, during March and May 2007, the government sent written notice by certified mail and regular post directly to the only person who had filed a claim to the funds in the administrative forfeiture process, Ms. Renee Jones Perry.

5. In March and May 2007, the government three times sent notice to Ms. Perry at an address that she had used in letters about the forfeiture. In writing to the DEA on December 27, 2006, Ms. Perry gave her return address as "XXX Tamarack Court, Upper Marlboro, MD 20774." This December letter had followed an earlier one from Ms. Perry, dated September 19, 2006, which

also listed the same Tamarack Court address. On December 7, 2006, the DEA had written to Ms. Perry at this address, explaining how to file properly a claim in the administrative forfeiture process. Ms. Perry's claim of December 28, 2007, listing the Tamarack Court address, appears to respond to the DEA's directions. Additionally, Ms. Perry met with MPD detectives on July 19, 2006, along with her son. Notes of this interview show that Ms. Perry gave the Tamarack Court address.

6.     Therefore, on March 27, 2006, the government sent to Ms. Perry to the Tamarack Court address a written notice of this action and a copy of the forfeiture complaint, using certified mail through the United States Postal Service (USPS). USPS returned this certified-mail notice to plaintiff as unclaimed. The envelope contains markings that first notice had been given on March 29, 2007, second notice on April 6, 2007, and USPS then returned it on April 15, 2007.[1]

7.     On May 25, 2007, the government sent a second written notice by certified mail through USPS to Ms. Perry at the Tamarack Court address. This, too, was returned unclaimed by June 26, 2007. Further, on May 25, 2007, the government send a written notice by regular post to Ms. Perry at the Tamarack Court address. This letter has not been returned.

8.     Additionally, the government had identified three other persons to whom it might be required to give notice under Rule G(4): (1) Mr. Michael Perry, who had been driving the car when

---

[1] As did all of the other notices mentioned in this response, the ones to Ms. Perry's Tamarack Court address indicated the dates they had been sent. The notices also included the following statement: "Individuals who intend to assert an interest in the defendant property and contest the forfeiture must file a verified Claim [in federal court in the District of Columbia in this case] **within 35 days** of the Government's sending of this Notice . . . . Additionally, claimants must serve and file Answers to the Complaint, or motions under Rule 12 . . . **within 20** days after filing their verified Claims." (Emphasis in original.) The notice contained undersigned counsel's name, address, and telephone number as the person upon whom the claim and answer should be served. These notices comply with Supplemental Rule G(4)(b)(ii), which specifies the content of direct notices to "any person who reasonably appears to be a potential claimant on the facts known to the government . . . ." Rule G(4)(B)(i).

police seized from it the $21,600 in a shoe box; (2) Mr. Tyrone Dickson, the adult passenger in the car; and (3) Ms. Kenya Terry, who leased the car and told police that she had loaned it to Mr. Perry on June 20, 2006, although she also said she had put no cash in the car.[2]

9.      Thus, the government sent Mr. Michael Perry formal written notice of this judicial forfeiture action and a copy of the case's forfeiture complaint. When arrested on June 20, 2006, Mr. Perry gave police the address of 13XX Allison Street, N.E., Washington, D.C., according to the PD 163 police report of his arrest. Further, Mr. Perry met with MPD officers on July 19, 2007, to discuss forfeiture of the defendant funds. Police notes of this conversation list Mr. Perry's address as 13XX Allison Street, S.E., Washington, D.C. 20017-2709.[3]

10.     Therefore, on March 27, 2006, plaintiff sent a written notice of this action and a copy of the forfeiture complaint to Mr. Perry by USPS certified mail. This was addressed to Mr. Perry

---

[2] Additionally, the government sent written notice to a Ms. TeKia Caldwell at Mr. Perry's Allison Street address. Mr. Perry's police arrest report states that he first said that he had got the money in the shoe box from his wife, who owned a beauty shop and few houses. Police notes from an interview on July 19, 2006, reflect that Mr. Perry identified TeKia Caldwell as his ex-wife from whom he is separated. The notes of the interview also indicate that Mr. Perry denied making the statement about getting the funds from his wife. Including Ms. Perry and Mr. Perry, Mr. Dickson, Ms. Terry, and Ms. Caldwell, these are all of the persons that could reasonably even appear to be potential claimants to the funds.

[3] The area encompassed in the zip code 20017 includes no part of the southeast quadrant of the District of Columbia. Zip Code 20017 lies exclusively in the city's northeast and northwest quadrants. The 1300 block of Allison Road, N.E., runs between Sargent Road, N.E., which turns into 13th Street, N.E., and South Dakota Avenue, N.E. This is at a point roughly between the far eastern edge of the Ft. Totten area and the northern fringe of the Brookland neighborhood. It is right by the top of grounds of the former St. Joseph's Seminary and close to the current Providence Hospital and St. Anselm's Abbey School. D.C. tax records show that 13XX Allison Road, N.E., is a single-family, two story residence, of about 1600 square feet. Personal observation confirms this – it is not an apartment building. There is no 1300 block of Allison Street, S.E., in the District of Columbia, nor apparently any Allison Street in southeast Washington, D.C. The three-syllable street name beginning with "A" in southeast Washington, D.C., is "Atlantic."

at 13XX Allison Street, S.E., Washington, D.C. 20017. This is the correct zip code for 13XX Allison Street, N.E., but the address label stated "S.E.."

11. USPS returned this certified-mail notice marked "unclaimed." The envelope contains markings that first notice had been given on March 31, 2007, second notice on April 4, 2007, and USPS then returned it after April 14, 2007. From this, plaintiff infers that USPS delivered the notice to the Allison Street address in northeast Washington, D.C., based on the 20017 zip code. Otherwise, plaintiff understands that the notice would have been returned marked "no such street" rather than "unclaimed."

12. On May 25, 2007, the government sent a second written notice by certified mail through USPS to Mr. Perry at the Allison Street address, marking the zip code as 20017, but giving the "S.E." quadrant. This, too, was returned marked "unclaimed" with and indicated that delivery had been attempted on May 29, 2007, June 2, 2002, and June 12, 2007. From this, plaintiff again infers that USPS delivered this second notice to the Allison Street, N.E., address in the 20017 zip code. Otherwise, the notice would have been returned marked "no such street" and not "unclaimed."

13. On September 7, 2007, two sworn police officers delivered to the residence at 13XX Allison Street, N.E., a copy of the forfeiture notice, a copy of the forfeiture complaint, and a letter to Mr. Perry from plaintiff. Nobody answered the door to the residence, and the officers left the envelope containing these document in the mailbox to the right of the front door. Earlier, on May 25, 2007, the government also had sent Mr. Perry a written notice by regular post to the Allison Street address, and this letter has not been returned.

14. On March 27, 2007, the government sent Mr. Tyrone Dickson a written notice of this action and a copy of the forfeiture complaint to his address in Maryland by USPS certified mail.

Thereafter, plaintiff received from USPS a signed receipt for delivery of the letter, which was dated March 29, 2007. As a result, Mr. Dickson had until May 3, 2007, to file a claim.

15.     On May 25, 2007, the government sent Ms. Ms. Kenya A. Terry a written notice of this action and a copy of the forfeiture complaint to her address by USPS certified mail. Thereafter, plaintiff received from USPS a signed receipt for delivery of the letter, which was dated May 29, 2007. As a result, Ms. Terry had until July 3, 2007, to file a claim in this action.[4]

16.     Further, a notice of this forfeiture action was published on April 24, 2007, in THE WASHINGTON TIMES, in full compliance with applicable rules of procedure.

17.     Plaintiff recommends that this Court defer further proceedings in this matter until at least 35 days from today's date. Although plaintiff believes that Mr. Michael Perry received actual notice of this action during March and May 2007, it took today the unusual extra step of sending three persons to his last known address on Allison Street, N.E., to deliver written notice of this action. Presuming Mr. Perry files no claim in this matter within 35 days, plaintiff intends to seek a forfeiture judgment by default. Before that time, plaintiff respectfully submits that it would be premature for the Court to take any other action.

Respectfully submitted,

_/s/_____
JEFFREY TAYLOR
UNITED STATES ATTORNEY
District of Columbia Bar No. 498610

---

[4] Plaintiff earlier had sent notice by certified mail to Ms. Terry on March 29, 2007, but received no signed receipt that its delivery had been accepted.

6

        _/s/_____
WILLIAM R. COWDEN
Assistant United States Attorney
District of Columbia Bar No. 426301


        _/s/_____
BARRY WIEGAND,
Assistant  United States Attorney
District of Columbia Bar No. 424288
555 4th St., N.W., Room 4818
Washington, D.C. 20530
(202) 307-0299

# SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS

**Rule G.  Forfeiture Actions in Rem**

. . .

**(4) Notice.**

  **(a) Notice by Publication.**

   **(i) When Publication Is Required.**  A judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders. . . .

   **(ii) Content of the Notice.**  Unless the court orders otherwise, the notice must:

   **(A)** describe the property with reasonable particularity;

   **(B)** state the times under Rule G(5) to file a claim and to answer;  and

   **(C)** name the government attorney to be served with the claim and answer.

   **(iii) Frequency of Publication.**  Published notice must appear:

   **(A)** once a week for three consecutive weeks;  or

   **(B)** only once if, before the action was filed, notice of nonjudicial forfeiture of the same property was published . . . in a newspaper of general circulation for three consecutive weeks in a district where publication is authorized under Rule G(4)(a)(iv).

   **(iv) Means of Publication.**  The government should select from the following options a means of publication reasonably calculated to notify potential claimants of the action:

   **(A)** if the property is in the United States, publication in a newspaper generally circulated in the district where the action is filed, where the property was seized, or where property that was not seized is located; . . .

  **(b) Notice to Known Potential Claimants.**

   **(i) Direct Notice Required.**  The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B).

   **(ii) Content of the Notice.**  The notice must state:

**(A)** the date when the notice is sent;

**(B)** a deadline for filing a claim, at least 35 days after the notice is sent;

**(C)** that an answer or a motion under Rule 12 must be filed no later than 20 days after filing the claim; and

**(D)** the name of the government attorney to be served with the claim and answer.

**(iii) Sending Notice.**

**(A)** The notice must be sent by means reasonably calculated to reach the potential claimant.

**(B)** Notice may be sent to the potential claimant or to the attorney representing the potential claimant . . . .

**(D)** Notice to a person arrested in connection with an offense giving rise to the forfeiture who is not incarcerated when notice is sent may be sent to the address that person last gave to the agency that arrested or released the person.

**(E)** Notice to a person from whom the property was seized who is not incarcerated when notice is sent may be sent to the last address that person gave to the agency that seized the property.

**(iv) When Notice Is Sent.** Notice by the following means is sent on the date when it is placed in the mail, delivered to a commercial carrier, or sent by electronic mail.

**(v) Actual Notice.** A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.